UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALISSON NICOLE GUEVARA MEJIA,

Petitioner,

v.

JULIO HERNANDEZ et al.,

Respondent.

CASE NO. 2:26-cv-03089-DGE

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1)

For the reasons that follow, the Court GRANTS the petition for writ of habeas corpus.

## I. BACKGROUND

Petitioner Alisson Guevara Mejia is a citizen of El Salvador and is currently detained at the Northwest ICE Processing Center ("NWIPC"). (Dkt. No. 1-2 at 2.) Petitioner entered the United States on April 15, 2024, with her mother, sister, and friend for a CBP One appointment. (*Id.*) The next day, she was issued an I-94 (Dkt. No. 8-1), a Notice to Appear ("NTA") in the Seattle Immigration Court in 2027 (*Id.*; Dkt. No. 6-2 at 12), and released on an Order of Release on Recognizance ("OREC"). (Dkt. No. 5 at 2.)

Petitioner and her family initially settled with a family friend in Alexandria, Virginia, before moving to Washington. (Dkt. No. 1-2 at 3.) Petitioner updated ICE with her new address after each move and attended yearly in-person check-ins when required. (*Id*. at 3.)

On April 4, 2025, Petitioner timely filed her asylum application with the help of counsel. (*Id*. at 4.) In October, she applied for a work permit based on her pending asylum application and began working part time as a cashier, then full time at a butcher shop, and filed taxes. (*Id*.)

Petitioner has struggled with her mental health since her teenage years, has been diagnosed with anxiety and depression, and has worked to develop coping strategies and an effective medication regimen. (*Id*.; Dkt. Nos. 1-3 at 4.) On April 7, 2026, Petitioner experienced an anxiety attack while in an argument with her mother and accidentally hit her mother while trying to create space between them. (Dkt. No. 1-2 at 4.) Petitioner's mother called 9-1-1 for help calming Petitioner down, and police arrived, however, they took Petitioner into custody against her mother's wishes. (Dkt. No. 1–3 at 3.) Petitioner's mother asserts that she "tried to tell the police why [she] had called and that [she] did not want them to take her or press charges, but [the police] still took her." (*Id*.) After one night in jail, the court dismissed the assault charge against Petitioner the next day. (Dkt. Nos. 1-2 at 5; 1-4.)

On June 17, 2026, Petitioner appeared at an in-person check-in at the Seattle ICE Field Office. (Dkt. No. 1-2 at 5.) When asked if she had any contact with the police, Petitioner mentioned the assault charge and was immediately arrested and transferred to NWIPC. (*Id*. at 5–6.) According to Petitioner, she "wasn't given any opportunity to explain what happened with [her] mom, or that the case was dismissed the following day." (Dkt. No. 1-2 at 5.)

Petitioner filed a petition for writ of habeas corpus on August 28, 2026, arguing that Respondents have violated her due process rights. (Dkt. No. 1.) On September 14, Federal

Respondents filed a return (Dkt. No. 4), and on September 21, 2026, Petitioner filed her traverse. (Dkt. No. 7.) The habeas petition is now ripe for the Court's review.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III. ANALYSIS

### A. Petitioner is detained under 8 U.S.C. § 1226(a), not § 1225.

Respondents assert Petitioner is subject to mandatory detention under 8 U.S.C. § 1225. (Dkt. No. 4 at 2-3.) Section 1225 applies to "applicants for admission" to the United States, who are defined as noncitizens "present in the United States who ha[ve] not been admitted or who arrive[] in the United States . . . ." 8 U.S.C. § 1225(a)(1). Applicants for admission fall into two categories. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). § 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud, misrepresentation, or a lack of valid documentation. On the other hand, § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" § 1225(b)(1). *Jennings*, 583 U.S. at 287. Persons falling within § 1225(b) are subject to mandatory detention. *See* 8 U.S.C. § 1225(b)(1)(B) *and* § 1225(b)(2)(A). Individuals detained under § 1225 can only be paroled into the United States "'for urgent humanitarian reasons or significant public benefit.'" *Jennings*, 583 U.S. at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)).

In contrast, 8 U.S.C. § 1226(a) is broader than its counterpart and is the "default rule" for noncitizens present in the United States who are arrested and placed in immigration detention. *Jennings*, 583 U.S. at 303. § 1226(a) permits the government to release a detainee on bond during the pendency of the detainee's removal proceedings. *Id.*

On the NTA Petitioner received on April 16, 2024, (Dkt. No. 6-2) the Customs and Border Protection ("CBP") officer checked the box for "arriving alien," the active language used to define the scope of § 1225(b)(2)(a) in its implementing regulation. 8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this chapter, any *arriving alien* who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to [§ 1229a] shall be detained in accordance with [§ 1225(b)].") (emphasis added); *see also Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass 2025) (concluding "arriving alien" language synonymous with § 1225). Petitioner was issued a I-94 on the same day as the NTA that designated her class of admission as "DT," indicating release on parole under 8 U.S.C. § 1182(d)(5)(A). (Dkt. Nos. 7 at 3; 8-1.)

Notwithstanding this initial designation, this Court, like others in this district, also considers the factual circumstances following a petitioner's entry when determining the relevant detention authority. *See Del Valle Castillo v. Wamsley*, No. 2:25-cv-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (finding that "where a petitioner has been treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225, the former is more likely to apply."); *see also Victoriano v. Mullin*, No. 2:26-cv-00886-RAJ, 2026 WL 1194596, at *3 (W.D. Wash. May 1, 2026) ("Courts in this District have repeatedly . . . concluded that petitioners who are released on an OREC and

subsequently re-detained are subject to Section 1226(a)," even if they "appear to have been apprehended upon arrival prior to their initial release on recognizance.").

First, individuals subject to § 1225 can only be released on parole for "urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 300; 8 U.S.C. § 1182(d)(5)(A). The record indicates Petitioner was released on her own recognizance with no finding the release was based on "urgent humanitarian reasons" or for "significant public benefit." (*See* Dkt. No. 5-3 at 2.)

Second, issuance and service of an NTA constitutes written notice that parole is terminated. 8 C.F.R. § 212.5(e)(2)(i). Thereafter, a noncitizen shall again be released on parole only if a "*removal order* cannot be executed within a reasonable time." *Id*. (emphasis added). Here, Petitioner was served an NTA on April 16, 2024. The service of this NTA terminated her parole status and, because she is not yet subject to a removal order, she could not have been released on parole on April 16, 2024.

Additionally, release on recognizance is synonymous with release pursuant to § 1226. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase "release on recognizance" as another name for "conditional parole" under § 1226(a)."). Further, Petitioner's OREC, Form I-220 (Dkt. No. 5 at 2) outlines conditions of release "in accordance with section 236 of the Immigration and Nationality Act," codified under 8 U.S.C. § 1226. When Petitioner was re-detained, her release was revoked pursuant to 8 U.S.C. § 1226, based on her alleged violation of her OREC. (*See* Dkt. No. 5 at 2.)

These circumstances demonstrate that, since immediately after her arrival, Respondents themselves have treated Petitioner as though she was subject to § 1226. *Yu v. Hernandez*, No. 2:26-cv-01372-DGE, 2026 WL 1560581, at *6 (W.D. Wash. May 22, 2026) ("[i]t would make

little sense for Respondents to revoke Petitioner's release on [an] order of recognizance issued pursuant to § 1226 if he was not in fact subject to § 1226's procedural framework."). Rather than subject her to mandatory detention under § 1225(b)(1) when she was released in 2024; Petitioner was released under an OREC and lived in the United States with the Government's permission for over two years after she presented herself at the border. (Dkt. No. 5 at 2.) *See Herrera Gomez v. Wamsley*, No. 2:25-CV-02642-JNW, 2026 WL 279966, at *2 (W.D. Wash. Feb. 3, 2026); *Jennings*, 583 U.S. at 289.

Based on the record, the Court finds Petitioner's is not subject to mandatory detention under § 1225.

**B. Petitioner's re-detention violated due process.**

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

1. <u>Private interest</u>

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Courts have continually recognized an immigration detainee's private interest in freedom from imprisonment. *See e.g. Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). This Court has

previously identified that an individual who was initially released from immigration custody is deprived of this private interest in freedom from imprisonment upon a renewed detention. *See Makuey v. Scott*, No. 2:25-cv-02135-DGE-BAT, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025) (finding the petitioner "has now been undeniably deprived of [his interest in liberty] because he was arrested, transferred to the NWIPC, and remains detained today" following an earlier release); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").

Here, Petitioner was released the day after her arrival. (Dkt. No. 1-2 at 2.) She was then at liberty in the United States for over two full years—working full-time, paying taxes, and helping to support her family. (Dkt. No. 1-3 at 5.) She dutifully appeared for her required in-person check-ins and filed a timely application for asylum. (Dkt. No. 1-2 at 2.)

Because of Petitioner's strong private interest in her continued liberty, this Court finds that the first *Mathews* factor weighs in her favor.

2. <u>Risk of erroneous deprivation through procedures used</u>

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, the risk of erroneous deprivation *without any hearing* is high.

Importantly, courts in this district have previously held that the government violates due process when an individual is placed in removal proceedings and released on their own recognizance but is then re-detained without a pre-deprivation hearing. *See Singh v. Noem*, No. 2:26-CV-00079-DGE, 2026 WL 265670, at *5 (W.D. Wash. Feb. 2, 2026); *Bello Chacon v.*

*Hermosillo*, No. 2:25-cv-02299-TMC, 2025 WL 3562666, at *4 (W.D. Wash. Dec. 12, 2025); *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *3 (W.D. Wash. Sept. 17, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322–1323 (W.D. Wash. 2025).

This Court has previously held that the risk of erroneous deprivation is especially high in cases where detention is based upon criminal charges that were either later dismissed or had not yet reached a final conviction at the time of detention. *See, e.g.*, *Safiulin v. Hernandez*, No. 2:26-cv-02701-DGE, 2026 WL 2546134, at *1 (W.D. Wash. Aug. 28, 2026 ("There was a high risk of erroneous deprivation . . . because the alleged basis for Petitioner's detention . . . was a misdemeanor criminal charge that had been dismissed[.]"); *Singh*, No. 2:26-CV-00079-DGE, 2026 WL 265670, at *5 (W.D. Wash. Feb. 2, 2026) (noting the government's failure to "explain why a pending charge, where no final decision has been reached, is sufficient to constitute a lack of 'compliance with all laws on the local, state and federal level.'").

Here, although Petitioner was arrested for assault, that charge was dismissed immediately the day following her arrest (Dkt. Nos. 1-2 at 5; 1-4.) Respondents themselves concede that they "were not aware [Petitioner's] charge had been dismissed at the time she was re-detained." (Dkt. No. 4 at 2.) The record suggests that based on this arrest alone, ICE decided without further investigation that Petitioner had "objectively violated the terms of her release." (*Id*. at 7.) Even a brief pre-deprivation hearing would have revealed important context surrounding the arrest and the near-immediate dismissal of the charge. The procedure used here—taking a mere arrest as definitive proof of criminal conduct—carries a high risk of erroneous deprivation.

Respondents argue that because Petitioner was believed to have violated the terms of her release at the time of her arrest, this was a "special case" in which Petitioner is only entitled to a post-deprivation hearing. (Dkt. No. 4 at 7.) The Court disagrees. Although "there may be

situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990)), Respondents offer no basis to conclude Petitioner's circumstances presented such an urgent scenario.[1] Respondents fail to "show how Petitioner's circumstances constitute a special case that 'urgently require[s] arrest' such that providing notice and a pre-deprivation hearing would reasonably be considered 'impracticable[.]'" *Bravo-Zambrano v. Bondi*, NO. C26-0167JLR, 2026 WL 879245, at *4 (W.D. Wash. Mar. 31, 2026).

Respondents re-detained Petitioner on the assumption that an arrest establishes criminal conduct. This practice carries an enormous risk of erroneous deprivation. Accordingly, the second *Mathews* factor heavily favors Petitioner.

3. <u>Government's interest</u>

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Admittedly, Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas*, 533 U.S. at 690. And although requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient.

---

[1] Nor is there any evidence in the record indicating Respondents have provided Petitioner with any post-deprivation hearing.

The Court acknowledges that the government has a strong interest in returning noncitizens to custody who violate conditions of release, but there is no indication that providing Petitioner with notice and an opportunity to be heard would have impaired this interest. As such, the third *Mathews* interest also weighs in favor of Petitioner.

4. <u>Weighing the *Mathews* Factors</u>

In sum, all three *Mathews* factors favor Petitioner. Petitioner's detention violates constitutional due process protections. As such, Petitioner has proven by a preponderance of the evidence she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

Petitioner's immediate release is the appropriate remedy for this constitutional violation of due process. *See E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (explaining that a "post-deprivation hearing[ ] cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an erroneous deprivation of liberty.").

**C. Injunctive relief is appropriate.**

Petitioner requests the Court "enjoin Respondents from re-detaining or placing any electronic GPS monitoring device on Petitioner during the pendency of her removal proceedings absent written notice and a hearing before a neutral decisionmaker where Respondents must prove by clear and convincing evidence that Petitioner is a flight risk or danger." (Dkt. No. 1 at 18.) Respondents argue "the request to enjoin future re-detention is speculative and seeks an advisory opinion." (Dkt. No. 4 at 9.) Having found due process violations (not only in this case but in many others with similar factual scenarios), the Court finds that issuing injunctive relief is appropriate. Each of the four *eBay* factors supports this conclusion. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

A party "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* Petitioner has satisfied the requirements for a permanent injunction. She suffered irreparable harm, through the violation of her constitutional right to due process and several months of unlawful detention. No monetary remedy can compensate for the deprivation of physical liberty. The balance of hardships favors Petitioner, as the injunction requires only that Respondents comply with the Constitution before re-detaining her. And the public interest is served by an order prohibiting Respondents from violating the Due Process Clause.

Petitioner has also established a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). ICE has already detained her without due process, raising concerns that, absent injunctive relief, she may be subject to the same due process violation again. Several courts in this district have granted similar relief under comparable circumstances. *See, e.g.*, *Nguyen v. Bondi*, Case No. 2:25-cv-02723-RAJ, 2026 WL 183819, at *6 (W.D. Wash. Jan. 23, 2026); *Wana v. Bondi*, Case No. 2:25-cv-02321-RSL, 2025 WL 3628634, at *6 (W.D. Wash. Dec. 15, 2025) (prohibiting re-detention without notice and hearing); *Tzafir v. Bondi*, Case No. 25-cv-02067-JHC-SKV, 2026 WL 74088, at *5 (W.D. Wash. Jan. 9, 2026) (same); *Yuksek v. Bondi*, Case No. 25-cv-02555-DGE-GJL, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same); *Do*

*v. Scott*, Case No. C25-2187-RSL, 2025 WL 3496909, at *6 (W.D. Wash. Dec. 5, 2025) (prohibiting re-detention without valid travel document and other specified conditions).

Accordingly, absent exigent circumstances or a clear statutory basis for detention, the Court prohibits Petitioner's re-detention unless Respondents first provide written notice of the basis for the proposed re-detention and an immigration court hearing is held to determine whether detention is appropriate. Respondents are further prohibited from placing conditions of release that are in addition to those conditions identified in her prior OREC.

As to who should carry the burden at any future pre-deprivation hearing, the Court is unaware of any Ninth Circuit decision governing the present circumstances but is persuaded by the analysis contained in *Espinoza Palacios v. Hermosillo*, Case No. 2:26-cv-491-JNW, 2026 WL 686138, *1 (W.D. Wash. Mar. 11, 2026). Petitioner's initial release on an OREC necessarily establishes that the government previously determined Petitioner was not a flight risk nor a danger. Accordingly, because it would be the government initiating an attempt to re-detain, "'it follows that the government should be required to bear the burden of providing a justification for the re-detention.'" *Espinoza Palacios*, 2026 WL 686138, at *11 (quoting *Espinoza v. Kaiser*, Case No. 1:25-cv-01101 JLT SKO, 2025 WL 2581185, at *14 (E.D. Cal. Sept. 5, 2025). Thus, the government shall bear the burden at any future pre-deprivation hearing.

## IV. ORDER

For the reasons stated herein, the Court GRANTS Petitioner's petition for writ of habeas corpus (Dkt. No. 1) and ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within **ONE (1) DAY** of

this Order. Petitioner shall be returned to the conditions of release identified in her April 16, 2024 Order of Release on Recognizance. Respondents SHALL NOT impose any additional restrictive conditions, such as an ankle monitor or GPS monitoring device, without notice or a pre deprivation hearing.

2. Petitioner SHALL NOT be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.

3. Respondents SHALL bear the burden of justifying re-detention or any additional restrictive conditions by clear and convincing evidence and must demonstrate that alternatives to detention are inadequate.

4. Within **TWENTY-FOUR (24) HOURS** of this Order, Respondents shall provide the Court with a declaration confirming Petitioner has been released from custody.

5. Respondents shall return to Petitioner any personal property, including personal identification documents (other than a passport) and employment authorization documents (EADs).

6. Petitioner seeks an award of fees. (Dkt. No. 1 at 18.) Petitioner is GRANTED leave to file a motion for attorney fees. The motion for fees shall identify the legal authority supporting an award of fees and shall be filed **no later than December 23, 2026.** [2] The Parties are strongly encouraged to meet and confer regarding fees before Petitioner files a motion for attorney fees.

---

[2] In a previous matter, Respondents have requested, and the Court granted, a motion to stay the enforcement of any award of attorney fees pending the Supreme Court's decision in *Palacios v. Liggins*, No. 25-1223. *See Douangdala v. Bondi*, Case No. 2:26-cv-00963-DGE, 2026 WL 2516555 (W.D. Wash. Aug. 26, 2026).

Dated this 24th day of September, 2026.

David G. Estudillo
United States District Judge